# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CARLA D. REASOR,** | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00061 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
|   **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case back to the Commissioner for further consideration consistent with this Memorandum Opinion.

*I. Background and Standard of Review*

Plaintiff, Carla D. Reasor, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Reasor protectively filed her applications for SSI and DIB on or about August 25, 2003, alleging disability as of August 19, 2003, based on a heart condition, high cholesterol, depression, anxiety and asthma. (Record, ("R."), at 67-70, 87, 143.) The claim was denied initially and on reconsideration. (R. at 52-54, 57, 58-60.) Reasor then requested a hearing before an administrative law judge, ("ALJ"). (R. at 61.) The ALJ held a hearing on May 11, 2005, at which Reasor was represented by counsel. (R. at 24-49.)

By decision dated June 27, 2005, the ALJ denied Reasor's claims. (R. at 15-21.) The ALJ found that Reasor met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 20.) The ALJ found that Reasor had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 20.) The ALJ found that the medical evidence established that Reasor suffered from severe impairments, namely coronary artery disease with history of myocardial infarction, asthma, hyperlipidemia, anxiety and depression, but he

-2-

Case 2:05-cv-00061-PMS   Document 16   Filed 11/16/06   Page 2 of 15   Pageid#: 119

found that Reasor did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ further found that Reasor's allegations regarding her limitations were not totally credible. (R. at 20.) The ALJ found that Reasor retained the functional capacity to perform simple, low-stress light work[1] that did not require working in dust, fumes or other respiratory irritants. (R. at 19-20.) Therefore, the ALJ found that Reasor could not perform any of her past relevant work. (R. at 20.) Based on Reasor's age, education and work history and the testimony of a vocational expert, the ALJ found that Reasor could perform jobs existing in significant numbers in the national economy, including those of an information clerk, an order clerk, a cashier, a sales clerk and a ticket seller. (R. at 20-21.) Thus, the ALJ concluded that Reasor was not under a disability as defined in the Act, and that she was not eligible for benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2006).

After the ALJ issued his decision, Reasor pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 6-10.) Reasor then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2006). The case is before this court on Reasor's motion for summary judgment filed April 24, 2006, and the Commissioner's motion for summary judgment filed May 24, 2006.

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b), 416.967(b) (2006).

Case 2:05-cv-00061-PMS   Document 16   Filed 11/16/06   Page 3 of 15   Pageid#: 120

## II. Facts and Analysis

Reasor was born in 1963, (R. at 68), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Reasor received her GED and has training in cosmetology. (R. at 27-28, 84.) She has past work experience as an apartment manager, a telephone switchboard operator in a hotel and an assistant restaurant manager. (R. at 79.)

At her May 11, 2005, hearing, Reasor testified that she last worked in July 2003 and suffered a heart attack the following month. (R. at 30-31.) Reasor stated that she continued to have difficulty with fatigue, shortness of breath, chest pain with exertion and memory impairment. (R. at 32-33.) She estimated that she could stand and/or walk for approximately 20 to 30 minutes and that she could sit for 30 to 40 minutes due to lower back pain. (R. at 38.) Reasor testified that even on "good days," she had to lie down five or six times due to fatigue. (R. at 38.) She stated that she performed housework each day, but could do so for only 20 to 30 minutes at a time due to fatigue and shortness of breath. (R. at 38-39.) She estimated that she could carry items weighing up to 10 pounds. (R. at 40.) Reasor further testified that she was unable to bend and stoop and that she experienced neck pain and lower back pain. (R. at 40-41.)

Reasor testified that she suffered a lot of anxiety and depression during her hospitalization in August 2003. (R. at 33.) She stated that she began regular mental health counseling following her discharge and that she was, at the time of the hearing, regularly seeing a psychiatrist. (R. at 33.) Reasor testified that her depression prevented her from wanting to get out of bed and be around people, noting that she

stayed in bed four to five days a month. (R. at 34.) Reasor testified that she experienced crying spells two to three times each week and more than one anxiety attack weekly. (R. at 34-36.) She further stated that she had difficulty dealing with the public, irritability and an inability to handle stress. (R. at 34-35.) She stated that she did not like to be around crowds of people. (R. at 35.) Reasor testified that she had been diagnosed with bipolar disorder. (R. at 37.) She stated that she did not socialize much, did not attend church and did not receive visits from friends. (R. at 41-42.) Reasor testified that she liked to read in the past, but no longer did so due to memory problems. (R. at 42.)

Donna Bardsley, a vocational expert, also was present and testified at Reasor's hearing. (R. at 46-48.) Bardsley classified Reasor's past work as a restaurant worker as medium[2] and semiskilled, her work as a switchboard operator as sedentary[3] and semiskilled and her work as an apartment manager as medium and skilled. (R. at 47.) Bardsley was asked to assume a hypothetical individual of Reasor's age, education and work history who could perform simple, low-stress light work that would not require exposure to excessive dust, fumes, chemicals and temperature extremes. (R. at 47.) Bardsley testified that such an individual could perform the jobs of an information clerk, an order clerk, a cashier, a sales clerk and a ticket seller. (R. at 47.) Bardsley was next asked to consider the same hypothetical individual, but who also

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2006).

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2006).

had the psychological limitations set forth in Spangler's assessment. (R. at 48.) Bardsley testified that such an individual could not perform any jobs. (R. at 48.)

In rendering his decision, the ALJ reviewed records from Lee Regional Medical Center; Holston Valley Medical Center; Cardiovascular Associates; Dr. Ann Mackway-Girardi, D.O.; Dr. Richard M. Surrusco, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Aroon Suansilppongse, M.D.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Julie Jennings, Ph.D., a state agency psychologist; Dr. Donald R. Williams, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. R. Semidei, M.D.[4]; Robert Spangler, Ph.D., a licensed psychologist; and Stone Mountain Health Services.

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 685 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is

---

[4]Dr. Semidei's first name is not contained in the record.

Case 2:05-cv-00061-PMS   Document 16   Filed 11/16/06   Page 6 of 15   Pageid#: 123

unable to return to her past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based

on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d) if he sufficiently explains his rationale and if the record supports his findings.

In her brief, Reasor argues that the ALJ erred by failing to address the opinions of Dr. Semidei. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 9-13.) Reasor also argues that the ALJ erred by failing to give full consideration to the findings of psychologist Spangler regarding the severity of her mental impairments and their resulting effects on her ability to work. (Plaintiff's Brief at 14-18.) Reasor further argues that the ALJ erred by failing to find that her impairments met or equaled § 4.04(C), the medical listing for ischemic heart disease with coronary artery disease. (Plaintiff's Brief at 18-21.) Finally, Reasor argues that the ALJ erred by failing to find that her impairments met or equaled §§ 12.04, 12.06, the listings for affective disorders and anxiety related disorders, respectively. (Plaintiff's Brief at 22-30.)

Reasor first argues that the ALJ erred by failing to address the medical opinions of Dr. Semidei. (Plaintiff's Brief at 9-13.) Thus, Reasor contends that the ALJ improperly failed to evaluate all of the evidence of record and failed to explain on the record the reasons for rejecting Dr. Semidei's opinion. For the following reasons, I agree.

It is well-settled that the ALJ has a duty to weigh the evidence. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Specifically, the ALJ must indicate explicitly that all relevant evidence has been weighed and its weight. *See Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). "Unless the [Commissioner] has

analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reaches are rational.'" *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). The ALJ stated in his decision as follows: "[i]n making this [disability determination], the undersigned has considered all medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations." (R. at 18.) However, nowhere in his decision does the ALJ discuss Dr. Semidei's findings.

Dr. R. Semidei, M.D., saw Reasor on approximately five occasions, from July 1, 2004, to March 16, 2005. (R. at 231, 236, 363, 367-68, 371.) He diagnosed major depressive disorder, recurrent, moderate, rule out bipolar disorder II and rule out anxiety disorder, not otherwise specified. (R. at 236.) He prescribed Lithium in addition to Reasor's then-current medications consisting of Prozac, Buspar and Xanax. (R. at 236.) On August 16, 2004, Dr. Semidei diagnosed Reasor with bipolar disorder, depressive version, and major depressive disorder, mild, +/- psychotic features. (R. at 231.) He increased her Lithium dosage. (R. at 231.) On December 15, 2004, Dr. Semidei again diagnosed bipolar disorder, depressive version. (R. at 371.) He continued her on Lithium and Prozac. (R. at 371.) On February 16, 2005, Reasor complained of tremors. (R. at 367.) She was again diagnosed with bipolar disorder, depressive version. (R. at 367.) Dr. Semidei discontinued Lithium in an effort to eliminate Reasor's tremors, and he prescribed Topamax for mood

stabilization. (R. at 367.) On March 16, 2005, Reasor noted that her tremors had resolved, but she complained of increased irritability since the discontinuation of Lithium. (R. at 363.) She further reported psychomotor agitation, racing thoughts and decreased motivation, attention and concentration. (R. at 363.) Dr. Semidei noted that Reasor's affect was blunted and her mood was dysthymic. (R. at 363.) He again diagnosed bipolar disorder, depressive version, prescribed Geodon and increased her dosage of Desyrel. (R. at 363.)

Thus, it is clear from the record that Dr. Semidei consistently diagnosed bipolar disorder and prescribed various medications, including Lithium, in an effort to control Reasor's symptoms. It further is clear that Dr. Semidei's findings are relevant to the ALJ's disability determination with regard to Reasor's mental impairments and their resulting effect on her ability to perform work-related activities. That being the case, I find that the ALJ erred by failing to consider Dr. Semidei's findings in arriving at his disability determination. I further find that this court cannot make a determination as to whether the ALJ's decision is supported by substantial evidence without an analysis by the ALJ of this evidence. Therefore, I will remand the case to the ALJ for further consideration of Dr. Semidei's findings. Based on this finding, it is unnecessary for me to address Reasor's remaining arguments related to her mental impairment.

Reasor also argues that the ALJ erred by failing to find that her impairments met or equaled the requirements of § 4.04(C), the listing for ischemic heart disease with coronary artery disease. (Plaintiff's Brief at 18-21.) Specifically, § 4.04(C) requires a claimant to make the following showing:

-10-

> Ischemic heart disease, with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment (see 4.00A if there is no regimen of prescribed treatment). With one of the following . . . Coronary artery disease, demonstrated by angiography (obtained independently of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both 1 and 2.
>
> 1. Angiographic evidence revealing:
> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
> d. 50 percent or more narrowing of at least 2 nonbypassed coronary arteries; or
> e. Total obstruction of a bypass graft vessel; and
>
> 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04(C). Section 4.00(E)(3) states as follows:

> Ischemic (coronary) heart disease may result in an impairment due to myocardial ischemia and/or ventricular dysfunction or infarction. For the purposes of 4.04, the clinical determination that discomfort of myocardial ischemic origin (angina pectoris) is present must be supported by objective evidence as described under 4.00C1, 2, 3, or 4.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(E)(3). According to § 4.00(C)(1)-(4), the objective medical testing referred to in § 4.00(E)(3) includes electrocardiography, exercise testing, two-dimensional and Doppler echocardiographic studies of

ventricular size and function as well as radionuclide myocardial perfusion or radionuclide ventriculograms and cardiac catheterization.

For the following reasons, I find that the ALJ's failure to find that Reasor's impairments met or equaled the requirements of § 4.04(C) is supported by substantial evidence. While the record shows that Reasor suffered a myocardial infarction in August 2003, the record also shows that after undergoing a cardiac catheterization and directional coronary atherectomy of the ostial LAD, the stenosis in Reasor's left anterior descending artery, ("LAD"), was decreased from 90 percent to 10 to 20 percent. (R. at 188-90, 199-200.) Reasor was diagnosed with coronary artery disease upon discharge and was placed on medications. (R. at 188.) Following her surgery, Dr. Christopher Metzger, M.D., noted that Reasor was doing well from a cardiovascular standpoint. (R. at 213.) Also at that time, Dr. Metzger diagnosed Reasor with coronary artery disease, doing well with no symptoms suggestive of restenosis. (R. at 213.) Reasor noted chest discomfort with heavy exertion on three occasions lasting two to three minutes and resolving with rest. (R. at 213.) Nonetheless, Reasor denied any syncope, presyncope, palpitations or symptoms of congestive heart failure. (R. at 213.)

On January 27, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment, indicating that Reasor could perform light work. (R. at 257-64.) He imposed no postural, manipulative, visual, communicative or environmental limitations. (R. at 259-61.) Dr. Surrusco's findings were affirmed by another medical consultant on February 11, 2004, with some exceptions. (R. at 266-67.) Specifically, the medical consultant

found that Reasor could frequently climb stairs, but could only occasionally climb ladders and ropes. (R. at 266.) The medical consultant further found that Reasor should avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 261, 266.)

In March 2004, Reasor noted a squeezing in the midsternal area without radiation associated with some mild shortness of breath upon physical exertion with resolved with 10- to 15-minute rest periods. (R. at 210.) Again, she denied any progressive dyspnea, paroxysmal nocturnal dyspnea, ("PND"), orthopnea, edema or palpitations. (R. at 210.) Physical examination revealed regular rate and rhythm of the heart and normal S1 and S2 waves. (R. at 210.) No murmurs, rubs or gallops were noted. (R. at 210.) A systolic murmur at the left sternal border that did not radiate was noted. (R. at 210.) Christy Willocks, a family nurse practitioner for Dr. Metzger, noted that Reasor continued to have coronary symptoms and that a stress test would be scheduled to rule out reocclusion. (R. at 210-11.) The stress test, performed on April 8, 2004, revealed normal results with no evidence of exercise-inducible ischemia. (R. at 219-20.) In July 2004, Reasor reported experiencing panic attacks with some chest discomfort. (R. at 207.) However, she again denied progressive dyspneic symptoms, tachypalpitations, PND, orthopnea or syncopal episodes. (R. at 209.) A physical examination again revealed a regular rate and rhythm of the heart with normal S1 and S2 and no murmurs, rubs or gallops. (R. at 207.) Reasor was diagnosed with coronary artery disease with stable symptoms. (R. at 207.) Willocks noted that she was basing this on the recent stress test that showed a normal ejection fraction and no evidence of ischemia. (R. at 207.)

On July 30, 2004, Dr. Donald R. Williams, M.D., a state agency physician, completed a physical assessment, finding that Reasor could perform light work. (R. at 316-24.) Dr. Williams imposed no postural, manipulative, visual, communicative or environmental limitations. (R. at 319-21.) On August 24, 2004, Dr. Ann Mackway-Girardi, D.O., opined that Reasor was disabled due to hypertension and cardiovascular disease. (R. at 230.) The same day, Dr. Mackway-Girardi completed a physical assessment, finding that Reasor could lift and carry less than 10 pounds occasionally and frequently. (R. at 226-29, 359-62.) She further found that Reasor could stand and/or walk for less than two hours in an eight-hour workday, that her ability to sit was not impaired and that she was limited in her ability to push and/or pull in both her upper and lower extremities. (R. at 226-27, 359-60.) Dr. Mackway-Girardi found that Reasor could occasionally balance, but could never climb, kneel, crouch, crawl or stoop. (R. at 227, 360.) She further found that Reasor was limited in her ability to reach, to handle objects, to finger objects and to feel. (R. at 228, 361.) Dr. Mackway-Girardi found that Reasor's ability to see was limited. (R. at 228, 361.) Finally, Dr. Mackway-Girardi concluded that Reasor should not work around temperature extremes, dust, vibration, humidity / wetness, hazards and fumes, odors, chemicals or gases. (R. at 229, 362.)

In October, November and December 2004, Reasor again exhibited a regular rate and rhythm of the heart with no murmurs. (R. at 369, 372, 374.) In February 2005, Reasor reported exertional chest pain with radiation into the left arm and an increase in fatigue. (R. at 369.) In March 2005, Reasor exhibited a regular rate and rhythm of the heart with no murmurs. (R. at 364.) In January 2005, Reasor reported sharp midsternal chest pain that radiated into the left arm with overexertion. (R. at 379.) She stated that these episodes lasted approximately five minutes and resolved with rest. (R. at 379.) She indicated no associated symptoms, including progressive

-14-

dyspnea, PND, orthopnea, edema, tachypalpitations, presyncope or syncopal episodes. (R. at 379.) Reasor exhibited a regular rate and rhythm of the heart with no murmurs, gallops or rubs. (R. at 379.) An annual stress test, performed on February 25, 2005, revealed no abnormal ST changes and no evidence of myocardial infarction or Dobutamine-induced ischemia. (R. at 382.)

For all of these reasons, I find that substantial evidence supports the ALJ's failure to find that Reasor's impairments met or equaled the requirements of § 4.04(C).

### III. Conclusion

For the foregoing reasons, Reasor's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be denied. The ALJ's decision denying benefits will be vacated, and the case will be remanded to the ALJ for further consideration of Dr. Semidei's findings. Given this disposition, I find it unnecessary to address Reasor's request for oral argument at this time.

An appropriate order will be entered.

DATED: This 16th day of November 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE